IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

TELLO J. ANGELINA,                              *

    Plaintiff,                                  *               Case No.: GJH-15-2427

                           *

v.                                              *

CUMBERLAND FCI
HEALTH SERVICES, *et al.*,                      *

    Defendants.                                 *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or alternatively, for Summary Judgment filed by Defendants[1] Federal Correctional Institution-Cumberland Health Services, the Federal Bureau of Prisons, Health Services Administrator Shook ("HSA Shook"), Clinical Director M. Moubarek, ("Director Moubarek"), Warden T. Stewart ("Warden Stewart"), Captain Phipps ("Cpt. Phipps"), Nurse Practitioner Crites ("NP Crites") and Disciplinary Hearing Officer Losiewicz ("DHO Losiewicz").[2] ECF No. 33. Plaintiff was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response in opposition to the motion filed by Defendants could result in dismissal of the Complaint. ECF No. 34. Plaintiff has failed to file anything in opposition. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' dispositive motion will be granted.

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants.
[2] Counsel accepted service on behalf of Defendants solely in their official capacity. ECF No. 33-1 at 1.

## I.      BACKGROUND[3]

Plaintiff Tello J. Angelina, a former inmate previously confined at the Federal Correctional Institution ("FCI") in Cumberland, Maryland, filed this Complaint naming as Defendants Federal Correctional Institution-Cumberland Health Services, the Federal Bureau of Prisons, HSA Shook, Director Moubarek, Warden Stewart, Cpt. Phipps, NP Crites and DHO Losiewicz. ECF No. 1 at 1-2. Plaintiff alleged he was denied constitutionally adequate medical care in violation of the Eighth Amendment, and was denied due process in a disciplinary proceeding while housed at FCI Cumberland. *Id.* As a federal prisoner, Plaintiff asserts his civil rights claims pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id.*[4]

In support of his Complaint, Plaintiff states that in April of 2013 he was transferred to FCI Cumberland where he underwent a physical examination and was assigned to NP Crites. ECF No. 1 at 2.[5] During his initial examination, Plaintiff provided his complete medical history to NP Crites and released medical records he had in his possession. *Id.* He also provided to NP Crites the names and addresses of his past medical providers so that all supporting documentation and medical files could be examined. *Id.* Plaintiff advised NP Crites that he had a cancerous tumor removed from his left testicle in 1982; lung cancer in 1990, which resulted in the removal of the upper right lobe; and a second lung cancer in 2008 in the left lung. *Id.* Plaintiff advised that the cancers were treated via surgery, radiation and chemotherapy. *Id.*

---

[3] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint, and are accepted as true.

[4] Plaintiff refers to 42 U.S.C. § 1983 rather than *Bivens* in his Complaint but as Defendants were acting under color of federal rather than state law, Section 1983 is inapplicable. Thus, the Court will construe Plaintiff's claims as alleging a violation under *Bivens*.

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to page numbers generated by that system.

Plaintiff states that he also advised NP Crites that in 2005 he experienced acute and ultimately chronic problems with his bladder and the ability to pass urine. *Id.* He told NP Crites that a urology specialist advised him that due to all of the treatments he had undergone, it was likely that the nerves that signal bladder relief had been damaged. *Id.* Plaintiff advised NP Crites that at that time the issues with his bladder were "a minor nuisance." *Id.* at 3.

Plaintiff further advised NP Crites that his oncologist advised him that "due to his age and type of cancers, [his] prognosis for survival after (5) five years was not optimistic." *Id.* The oncologist suggested that Plaintiff undergo x-rays every four months for possible early detection. *Id.*

In October of 2013, Plaintiff began to experience serious problems with his bladder. *Id.* He states that he tried to seek medical help but received no reply other than to be directed to submit "cop-outs" to the doctor or nurse provider and watch for "call out," appointments for inmates posted on a daily call out sheet. *Id.*

On January 8, 2014, Plaintiff submitted a request to health services indicating he was having "difficulty in passing water" and advising that he had this problem in the past, took medication, and the issue resolved. *Id.* at 11. The problem had now resurfaced and he sought medical attention. *Id.* Plaintiff was seen by Physician's Assistant ("P.A.") Tom Gera on January 24, 2014. *Id.* at 12. It was noted that Plaintiff reported a history of symptoms of underactive bladder, urinating approximately two-three times daily. *Id.* It was also noted that Plaintiff stated he consulted with an urologist in the past who prescribed medication for the condition. *Id.* Gera did not prescribe medication or indicate any follow up regarding this issue. *Id.*

On February 22, 2014, Plaintiff was called to the lieutenant's office, along with other inmates, for a random urine screen. *Id.* at 4. Plaintiff advised the officer in charge that it would

3

be difficult for him to produce a specimen since he had just voided his bladder. *Id.* Plaintiff

requested an alternative testing e.g. blood test or oral swab, or to be placed in a "dry cell" until

he could provide a specimen. *Id.* Plaintiff also requested that the officers contact health services

in order to demonstrate he had a bladder condition which would prohibit him from providing the

sample. *Id.* The officers contacted HSA Shook who advised that there was no record that

Plaintiff suffered a bladder problem and he was not on medication to treat such a problem. *Id.*

Plaintiff unsuccessfully protested that the information was incorrect and directed HSA Shook

where he could locate the information. *Id.* Plaintiff was charged with an inmate rule violation for

failing to produce a urine sample in the allotted time. *Id.* He was placed in the special housing

unit ("SHU") pending a disciplinary hearing. *Id.*

Plaintiff was placed in a SHU cell where only a top bunk was available. *Id.* Plaintiff

indicates that several cells with bottom bunks were available. *Id.* at 5. He indicates that due to his

age and medical history and lack of access to the upper bunk via a ladder he continued to injure

his knees and thighs from "the acrobatics necessary to reach upper berth." *Id.*

On February 25, 2014, Plaintiff was given notice that his case would be heard before the

disciplinary hearing officer. *Id.* at 15. He was charged with "Refusing to Provide a Urine Sample

or to Take Part in Any Other Drug-Abuse Testing." *Id.* On that same date, he was notified of his

rights at a discipline hearing. *Id.* Plaintiff selected NP Crites to be his inmate advocate during his

disciplinary hearing. *Id.* He requested that she search his file and pull his "cop outs" and bring

P.A. Gera to the hearing to defend the charge. *Id.* at 5.

Plaintiff's disciplinary hearing was held before DHO Losiewicz on March 5, 2014. *Id.* at

5, 15-18. At the time of the hearing, Plaintiff was advised that NP Crites could not attend in

person and PA Gera was not able to attend as his witness. *Id.* at 5, 15-16. Plaintiff states that due

to the difficulty he was experiencing getting into the top bunk in his cell he agreed to proceed with the hearing. *Id*. at 5.

Plaintiff states that he was advised of the possible consequences if he were found guilty and the DHO also advised him that if Plaintiff could provide evidence in support of his claim regarding his bladder, he had an excellent chance for a favorable appellate outcome. *Id*.

During the hearing, Plaintiff denied refusing to submit a urine sample, indicating his inability to provide one. *Id*. at 15-16. NP Crites testified that Plaintiff had reported to PA Gera that he previously had problems urinating and his medical records had been requested to document the issue. *Id*. at 16. NP Crites further testified that she checked with the Chief Pharmacist and reviewed Plaintiff's medical records, finding no prescribed medications that would cause Plaintiff difficulty producing urine. *Id*. Plaintiff declined to ask any further questions of NP Crites. *Id*.

The DHO found Plaintiff had committed the prohibited act of refusing to provide a urine sample or take part in any other drug-abuse testing. *Id*.[6] In support of his finding, the DHO relied on the reporting officer's description of the incident as well as Plaintiff's admission that he did not provide the specimen within the time allotted. *Id*. at 16-17. In finding Plaintiff guilty of the rule infraction, the DHO took into consideration Plaintiff's statements regarding his past medical conditions and treatment and his efforts to secure additional treatment. *Id*. at 17. The DHO found there was little evidence to confirm or explain Plaintiff's inability to produce the specimen within the two-hour window. *Id*. After the hearing, plaintiff was found guilty and sanctioned to a loss of 41 days of good conduct credits, 20 days disciplinary segregation (suspended pending

---

[6] While Plaintiff states that he offered to take part in other drug-abuse testing, he does not claim to have mentioned this fact during the disciplinary hearing and the report of the hearing does not indicate any testimony by Plaintiff or other personnel regarding that issue.

180 days clear conduct) and 90 days social visiting restriction. *Id*. Plaintiff was provided written notice of the DHO decision. *Id*. 18.

Plaintiff has provided numerous sick call requests filed after his rule infraction seeking medical care regarding his bladder issues. *Id*. at 21-27. He also attached copies of complaints he filed regarding the lack of completeness of his medical records maintained by FCI-Cumberland. *Id*. at 29-30.

Plaintiff initiated this case on March 4, 2015, ECF No. 1. After a series of extensions, Defendants filed the pending Motion to Dismiss, or in the alternative, for Summary Judgment, on March 2, 2016. ECF No. 33. In their motion, Defendants assert that they are entitled to absolute immunity for Plaintiff's claims against them in their official capacity and that NP Crites is entitled to immunity as a member of the United States Public Health Service ("PHS"). ECF No. 33-1 at 8-10. Defendants assert that Plaintiff's medical claims should otherwise be dismissed for failure to state a claim as to each of the remaining Defendants. *Id.* at 12-14. Additionally, Defendants argue that Plaintiff's claims regarding his disciplinary hearing are barred under *Heck v. Humphrey,* 512 U. S. 477, 487 (1994), and otherwise he received all process that was due. *Id.* at 14-17.

## II.   STANDARDS OF REVIEW

### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006) (citation omitted). Once a challenge is made to subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has subject matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted);

*see also Ferdinand-Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010). The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans,* 166 F.3d at 647.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Pursuant to 28 U.S.C. §1915A, the Court must *sua sponte* dismiss a complaint filed by a prisoner seeking civil redress against a government entity or officer if it fails to state a claim upon which relief may be granted. *Ross v. Baron,* 493 F. App'x 405, 406 (4th Cir. 2012). Although complaints filed by pro-se plaintiffs should be liberally construed, *see Harris v. Janssen Healthcare Prods.*, No. ELH-15-2730, 2015 WL 5897710, at *2 (D. Md. Oct. 6, 2015), such a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").[7]

---

[7] Although Defendants have alternatively moved for summary judgment on Plaintiff's claims, the Court may, in its discretion, decline to consider materials presented outside of the pleadings. *See* Fed. R. Civ. P. 12(d); *Finley Lines Joint Projective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (explaining that Rule 12 vests district courts with discretion to determine whether or not to exclude matters outside the pleadings). As the Court need not rely on such materials to resolve the instant Motion, the Court will not consider such evidence at this time.

III.    DISCUSSION

A.  Lack of Subject-Matter Jurisdiction

1.  Official Capacity

Plaintiff's claims against a federal agency, the Federal Bureau of Prisons; a federal

facility, FCI Cumberland; and individual Defendants employed in said facility, HSA Shook,

Director Moubarek, Warden Stewart, Cpt. Phipps and DHO Losiewicz, in their official capacities

are subject to dismissal. A *Bivens* action will not lie against federal agencies or federal officials

in their official capacity. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Thus, Plaintiff's

allegations as they relate to the above referenced Defendants are dismissed as the Court lacks

subject matter jurisdiction over the claims. *C.f. Christian v. United States*, No. CIV.A. MJG-06-

1437, 2008 WL 5989879, at *5 (D. Md. Jan. 9, 2008), *aff'd*, 299 F. App'x 290 (4th Cir. 2008),

and *aff'd*, 299 F. App'x 290 (4th Cir. 2008) (holding that "*Bivens*-type actions against the United

States are ... routinely dismissed for lack of subject matter jurisdiction.") (internal citation

omitted).

2.  Absolute Immunity

NP Crites, an employee of the United States Public Health Services ("PHS"), is entitled

to absolute immunity as to Plaintiff's *Bivens* claim.[8] Plaintiff's sole remedy for Crites' alleged

conduct is through the Federal Tort Claims Act (FTCA). Title 42 U.S.C. § 233(a) provides:

> The remedy against the United States provided by [the FTCA]...for damage for
> personal injury, including death, resulting from the performance of medical,
> surgical, dental or related functions...by any commissioned officer or employee of

---

[8] Defendants refer to a declaration of Kristi Crites in their Motion, attesting to her membership in the PHS, but appear to have failed to attach it when the Motion was filed. The Court will take judicial notice of a declaration filed contemporaneously by Crites in another case, in which she declares that she "has been a member of the United States Public Health Service ("PHS") since September 2011." *Lopez v. Crites*, No. CV WMN-15-2973, 2017 WL 219373 (D. Md. Jan. 18, 2017), ECF No. 21-6 at 1.

the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding....

In *Hui v. Castaneda*, 559 U.S. 799 (2010), the Supreme Court held that §233(a) precludes a *Bivens* action against PHS personnel for constitutional violations arising out of their official duties. *Id*. at 802. "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Id*. at 806. The plain text of § 233(a) precludes a *Bivens* action. *Id*. at 811-12. As such, Plaintiff's claims against NP Crites are dismissed for lack of subject-matter jurisdiction.

### B. Failure to State a Claim

#### 1. Eighth Amendment Violations

The Eighth Amendment to the U.S. Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This encompasses "a prison official's deliberate indifference to [the] serious medical needs of prisoners." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal citation omitted). To establish a violation of the Eighth Amendment, a prisoner must allege sufficient facts to demonstrate that the deprivation was sufficiently serious, meaning that "it poses a serious or significant physical or emotional injury resulting from the challenged conditions," and that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* (internal citations omitted) (alteration in the original). "However, prisoners are not entitled to unqualified access to health care [and] the right to treatment is ... limited to that which may be provided upon a reasonable cost and time basis." *Adams v. Compton*, No. 7:04-CV-00258, 2005 WL 2006975, at *9 (W.D. Va. Aug. 17, 2005) (internal citations omitted).

9

### i.    Supervisory Liability

"In a *Bivens* suit, there is no *respondeat superior* liability. Instead, liability is personal,

based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402

(4th Cir. 2001) (internal citation omitted). Liability of supervisory officials "is premised on 'a

recognition that supervisory indifference or tacit authorization of subordinates' misconduct may

be a causative factor in the constitutional injuries they inflict on those committed to their care.'"

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368,

372 (4th Cir. 1984)) (discussing supervisory liability in the context of Section 1983 claims).

Nonmedical correctional supervisors are entitled to rely on the medical judgments and

expertise of prison medical staff as to the appropriate course of treatment for inmates. *See*

*Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1996); *see also Miltier v. Beorn*, 896 F. 2d 848, 854-

55 (4th Cir. 1990) (holding supervisory prison officials entitled to rely on the professional

judgement of trained medical providers and may only be found deliberately indifferent through

intentional interference in the inmate's medical care).

Plaintiff claims that he was denied prompt treatment of a chronic bladder condition.

However, he fails to allege sufficient facts to demonstrate that the officials in question "kn[ew]

of and disregard[ed] an excessive risk to inmate health or safety." *Scinto*, 841 F.3d at 225.

Plaintiff's claims against Warden Stewart are insufficient. Plaintiff does not allege that

Warden Stewart is personally responsible for the medical screening, diagnosis or treatment of

inmates. Furthermore, as a nonmedical supervisor, he would be entitled to defer to the opinions

and medical expertise of the professionals within the Health Services regarding any treatment of

Plaintiff's bladder condition. *See Shakka*, 71 F.3d at 167 (4th Cir. 1996). Plaintiff's claims

against HSA Shook are equally unavailing as Plaintiff has pointed to no personal conduct by him

regarding the provision of medical care. Rather, as with Warden Stewart, he seeks to hold him
liable solely on the basis of his supervisory role within the medical department at FCI-
Cumberland.

Finally, in regards to Director Moubarek, Plaintiff attaches to the Complaint an email to
HSA Shook regarding an appointment that Plaintiff had with Director Moubarek on October 4,
2014. ECF No. 1 at 28. Plaintiff stated that he "voiced [his] objection to certain points [he] felt
were not being attended to" regarding his medical care, to which Director Moubarek replied "[i]t
doesn't matter he'll be gone in two months." *Id.* It is unclear what exactly Plaintiff told Director
Moubarek about his medical condition. However, even if Director Moubarek and other prison
officials should have ideally acted with more diligence to address Plaintiff's medical concerns,
Plaintiff has failed to show that such violations rise to the level of a constitutional violation. *See
Adams*, 2005 WL 2006975, at *10 ("Inadvertent failure to provide treatment, negligent
diagnosis, and medical malpractice do not present constitutional deprivations.") (citing *Estelle v.
Gamble*, 429 U.S. 97, 104 (1976)). As Plaintiff has failed to allege sufficient facts to establish a
violation of his rights under the Eighth Amendment, his claims against HSA Shook, Director
Moubarek and Warden Stewart shall be dismissed.

### ii.  Cpt. Phipps and DHO Losiewicz

The complaint does not allege any personal participation by Cpt. Phipps or DHO
Losiewicz in regard to the challenged denial of treatment. As discussed above, "liability is
personal, based upon each defendant's own constitutional violations." *Trulock*, 275 F.3d at 402
(4th Cir. 2001) (internal citation omitted). Plaintiff does not attribute any action or inaction to
either Defendant that resulted in constitutional harm. In fact, other than being named in the
caption of the complaint, Cpt. Phipps is not mentioned anywhere in the factual allegations of the

11

complaint. Simply stated, Plaintiff's allegations fail to state a claim against Cpt. Phipps and DHO Losiewicz, and thus his claims against both Defendants shall be dismissed.

### 2. Due Process Violations

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that claims challenging the legality of a conviction are not cognizable in a 42 U.S.C. § 1983 action unless and until the conviction is reversed, expunged, invalidated, or impugned and complaints containing such claims must therefore be dismissed without prejudice. The same logic applies in a *Bivens* action. *See Adams v. Compton,. 7*:04-CV-00258, 2005 WL 2006975, at \*9 (W.D. Va. Aug. 17, 2005). Challenges to prison disciplinary hearing procedures which involve the loss of good conduct credits and which imply the invalidity of the judgment must be pursued in *habeas corpus*, not as actions alleging violations of constitutional rights. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding claim for declaratory relief and money damages based on allegations of deceit and bias by decision maker that necessarily implied the invalidity of the punishment imposed was not cognizable under § 1983). Plaintiff has not demonstrated that his disciplinary conviction has been overturned in his favor and as such his claim is barred by *Heck* and its progeny.

Even if Plaintiff could bring his disciplinary proceeding claim, the claim would nevertheless be unavailing. Prisoners retain rights under the Due Process Clause, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written

12

statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456-57; *see also Baker v. Lyles*, 904 F.2d 925, 933-34 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Plaintiff received all the process he was due. He received written, prior notification of the disciplinary hearing. He was permitted to testify on his own behalf, and although he waived his right to have his staff representative present at the hearing, NP Crites testified via telephone and Plaintiff was given an opportunity to ask her questions. Furthermore, the decision of the DHO was based upon some evidence which was explained thoroughly and Plaintiff was provided a written copy of the DHO's decision. As such, Defendants are entitled to dismissal as to

Plaintiff's claims arising from his disciplinary proceedings.[9]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment, ECF No. 33, shall be granted. A separate Order follows.

Dated: March 15, 2017

GEORGE J. HAZEL
United States District Judge

---

[9] Having found no constitutional violation, the Court need not address Defendants' claims that they are entitled to qualified immunity.